# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

VERA CLAIBORNE

                                              CIVIL ACTION

VERSUS

RECOVERY SCHOOL DISTRICT, ET AL.                  14-483-SDD-RLB

## RULING

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendant, the Recovery School District ("Defendant" or "RSD").  Plaintiff, Vera Claiborne ("Plaintiff" or "Claiborne"), has filed an *Opposition*[2] to which RSD has filed a *Reply Brief*.[3] For the following reasons, RSD's motion shall be granted.

## I.  INTRODUCTION AND PROCEDURAL HISTORY

On May 22, 2012, Claiborne began working for the RSD at Prescott Middle School ("Prescott") as an interventionist.[4]  Prescott operated out of the Istrouma High School building.[5]  The two-story building lacked an elevator,[6] classrooms were on both the first and second floors,[7] and all restrooms were located on the first floor.[8]

Two weeks after Claiborne's employment commenced her job title changed to paraprofessional.  Although Claiborne's job title changed, her job duties and salary remained the same.[9]  Claiborne's job duties included monitoring the students, which required her to walk up and down stairs of Prescott's two story building, escorting students

---

[1] Rec. Doc. 14.
[2] Rec. Doc. 20.
[3] Rec. Doc. 23.
[4] Rec. Doc. 14-4, p. 3.
[5] Rec. Doc. 14-4, p. 25; Rec. Doc. 14-12, p. 3.
[6] Rec. Doc. 14-4, p. 11.
[7] Rec. Doc. 14-4, pp. 25-26.  Prescott closed after the 2013-2014 school year.  Rec. Doc. 14-5.
[8] Rec. Doc. 14-12, pp. 4-5; Rec. Doc. 14-12, pp. 3-6.
[9] Rec. Doc. 14-4, pp. 3-4.

to and from the cafeteria, walking around classrooms to ensure students were doing their work, and bus duty.  Claiborne had bus duty every morning which required her to climb up and down stairs, wait for the buses to arrive, and stand in the halls between classes to monitor the students.[10]

On November 15, 2012, Claiborne slipped and fell in the school hallway while escorting two students to another office.[11]  Later that day, she filled out an accident report.[12]  After speaking with the Human Resources (HR) department, a worker's compensation claim was filed on Claiborne's behalf by November 17, 2012, and she began receiving workers' compensation medical benefits.[13]

Following her slip-and-fall, Claiborne began experiencing pain ascending and descending the stairs at Prescott, particularly in the morning.  According to Claiborne, she made one verbal request for an accommodation to Principal Rodney Coates ("Coates") on November 29, 2012.[14]  She claims her accommodation request included not having to walk up and down the stairs, walk around and monitor the students in the cafeteria at lunch time, or being required to have bus duty.[15]  As a result of this request, Claiborne claims the guidance counselor assisted her with her students during lunch one day.[16]  Claiborne also asserts that she made an additional written request for an accommodation in February or March of 2013, when her physical therapist submitted an undated note

---

[10] Rec. Doc. 14-4, pp. 15-16.
[11] Rec. Doc. 14-4, pp. 11-12.
[12] Rec. Doc. 14-4, p. 12.
[13] Rec. Doc. 14-7.
[14] Rec. Doc. 14-4, p. 13.
[15] Rec. Doc. 14-4, pp. 15-16.
[16] Rec. Doc. 14-4, pp. 13-14.

asking that she be excused "from ascending and descending stairs consistently during the day until further notice."[17]  No other requests for accommodation were made.

In March or April of 2013, Claiborne learned that she had exhausted her sick leave, and submitted a workers' compensation claim for salary benefits, which she began receiving in June of 2013.[18]

In April of 2013, Claiborne claims that she was out on sick leave when she received a call from the School Secretary, Brenda Claiborne, who informed her that she needed to report to work to assist with the Louisiana Educational Assessment Program ("LEAP") test or else she would be fired.[19]  Claiborne returned to work the following day.[20] According to Claiborne, two days later, on April 11, 2013, Principal Coates allowed her to leave work early after she after she reported pain.[21]  Claiborne remained out on sick leave for the rest of the semester.[22]

In mid-June of 2013, Claiborne learned from Brandy Whitfield ("Whitfield") with the RSD's HR department that she had been terminated.[23]  Claiborne claims that Whitfield told her she had been fired because she was "at risk."[24]  RSD, on the other hand, contends that Claiborne had been laid-off as part of a district wide reduction in force ("RIF") and that this information was conveyed to Claiborne by certified mail correspondence.[25]

---

[17] Rec. Doc. 14-11.
[18] Rec. Doc. 14-4, pp. 23-24; Rec. Doc. 14-7.
[19] Rec. Doc. 20-4, p. 41.
[20] Rec. Doc. 20-4, p. 66.
[21] Rec. Doc. 20-4, p. 41 and p. 66.
[22] Rec. Doc. 20-4, p. 41.
[23] Rec. Doc. 20-4, p. 44.
[24] Rec. Doc. 20-4, pp. 44, 46, and 49.
[25] Rec. Doc. 14-5; Rec. Doc. 14-9; and Rec. Doc. 14-10.

On December 3, 2013, Claiborne filed an EEOC Charge of Discrimination against the RSD under Title VII and the Americans with Disabilities Act (ADA).[26]   After an unsuccessful attempt at mediating her claims against the RSD through the EEOC, Claiborne filed a state lawsuit in which she claimed that RSD violated the ADA and Louisiana's Employment Discrimination Law (LEDL) by failing to accommodate her and for terminating her because of her disability.[27]   Claiborne further alleged that RSD terminated her in retaliation for requesting an accommodation in violation of the ADA and for filing a worker's compensation claim in violation of La. R.S. 23:1361(B).[28]   RSD timely removed this case to federal court asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

RSD contends it is entitled to summary judgment on all of Claiborne's claims.  RSD argues that Claiborne cannot establish a *prima facie* case of failure to accommodate or disability discrimination under the ADA or the LEDL.  RSD further asserts that Claiborne's retaliation claims brought under the ADA and state law must fail because it had a legitimate, non-retaliatory reason for terminating Claiborne.  Claiborne opposes RSD's motion.

## II.   LAW AND ANALYSIS

### A.  Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29]   "When assessing whether a dispute to any material fact exists, we consider all

---

[26] Rec. Doc. 14-8.
[27] Rec. Doc. 1-1.
[28] Rec. Doc. 1-1.
[29] Fed. R. Civ. P. 56(a).

of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[30]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[31]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[32]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[33]

"A genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[34]  All reasonable factual inferences are drawn in favor of the nonmoving party.[35]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[36]  "Conclusory allegations unsupported by specific facts … will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his

---

[30] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

[31] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (5th Cir. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, at 2552 (1986))).

[32] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[33] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little*, 37 F.3d at 1075 (internal quotations and citations omitted)).

[34] *Pylant v. Hartford Life and Accident Insurance Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[35] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[36] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""[37]

### B.  Failure to Accommodate Claim

Claiborne claims that the RSD failed to accommodate her disability as required by the ADA and under the LEDL.  Both the ADA and the LEDL prohibit employers from discriminating against disabled individuals by failing to make reasonable accommodations for "qualified" disabled individuals, unless such accommodations would impose an undue hardship.[38]  To establish a *prima facie* case of discrimination based on failure to accommodate a disability, "a plaintiff must satisfy the elements of 42 U.S.C. § 12112(b)(5): (1) she had a disability; (2) she was qualified for the job; (3) her employer knew of the disability; (4) she requested an accommodation; (5) a reasonable accommodation existed that would have allowed her to perform the essential functions of the job; and (6) her employer failed to provide a reasonable accommodation."[39]  Here, the dispute between the parties lies with the fifth element—whether a reasonable accommodation existed at RSD that would have allowed Claiborne to perform the essential functions of her job.

---

[37] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[38] 42 U.S.C. § 12112(b)(5)(a); La. R.S. §23:323(B)(1).

[39] *Mascarella v. CPlace University SNF, LLC*, 2015 WL 2414518, *10 (M.D.La. May 20, 2015); *Dean v. Louisiana*, 2015 WL 339008, *4 (W.D.La. Jan. 23, 2015)).  "The Fifth Circuit has held that claims brought under LEDL are analyzed using the same framework and precedent as the ADA claims, leading to the same result."  *Moore v. Mancuso*, 2015 WL 6744308, *2 (W.D.La. Nov. 3, 2015)(quoting *Tribble v. Ouachita Parish Police Jury*, 939 F.Supp.2d 626, 629-30 (W.D.La. 2013)).  *See also, Galarza v. Ochsner Health Systems, Inc.*, 2014 WL 1431708, n.3 (M.D.La. Apr. 14, 2014)(citing *Tribble v. Ouachita Parish Police Jury*, 939 F.Supp.2d 626, 629-30 (W.D.La. 2013)(citing *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989)).  Therefore, the Court's analysis and findings regarding the claims brought under the ADA apply with equal force to those brought under the LEDL.

Claiborne claims that, as a result of her slip and fall accident, she began experiencing pain in her back.  One of the essential functions of Claiborne's job was monitoring students at Prescott, which required Claiborne to walk around classrooms and the cafeteria; engage in bus duty; and climb up and down the stairs while escorting students to various destinations.[40]  Bus duty required Claiborne to wait with students until their busses arrived, standing in the hallways, and monitoring students in between classes.[41]  In her deposition, Claiborne claimed that RSD failed to make the following reasonable accommodations:   relieving her from the necessity of using the stairs, relieving her of the job of monitoring students in the cafeteria at lunch, and relieving her of bus duty.[42]  RSD moves for summary judgment on Claiborne's failure to accommodate

---

[40] Principal Coates testified that Claiborne's job duties and responsibilities required her to monitor students. Rec. Doc. 14-12, p. 7.  Claiborne's deposition testimony further supports this finding. Rec. Doc. 14-4, p. 6 (Claiborne testified that she "monitored students and made sure they were doing their work and not leaving off the site and help[ed] them with their work, going from student to student.  And walk[ed] around and ma[de] sure that if they needed help, … [she] would go to the computer and help them with it and answer questions, and then go[] from student to student until that class end[ed]."); p. 7 (Claiborne explained that she "was constantly walking to make sure that they [students] didn't" play around on the computer); p. 8 (Claiborne testified that she worked with students in the "Virtual English" classroom which required her to monitor and walk around the classroom to make sure the students were paying attention); p. 9 (Claiborne explained that as a "para-professional" she had to "go up and down the stairs" and "follow the special ed class and go in the classroom and help them with their work and monitor them and walk around"); p. 10 (Claiborne also testified that she "had to go upstairs and downstairs to math class and follow the students to each class"); p. 13 (Claiborne's responsibilities required her to take the students she monitored to the rest room); p. 15 (Claiborne stated that she had to monitor students at lunch "because they had different lunch schedules.  So [she] had to walk around the cafeteria until lunch was over and then the teachers would come in and call for their class…But you had to stand the whole time and walk around").

[40] It is not clear to the Court whether Claiborne is arguing that Principal Coates failed to accommodate her by not permitting Claiborne's former colleague, Roger Cooper, to "switch assignments" with her so she could monitor fewer students.  To the extent Claiborne is making such an argument, the Court notes that the request was made by Cooper, not Claiborne.  Secondly, under the ADA, the RSD had no obligation to make such an "accommodation" as it would have relieved Claiborne of the essential functions of her job and imposed those functions on another employee.

[41] Rec. Doc. 14-4, pp. 15-16 (In her deposition testimony, Claiborne explained that she had bus duty in the mornings that required her to "go upstairs in the morning and sign in and go in the classroom and check the schedule…Then [she] had to go back downstairs and wait for the busses to come, until the last bus.  And then you had to go back upstairs and wait for your class.  Then you had to stand in the hall between classes to monitor the halls.").

[42] Rec. Doc. 14-4, p. 15-16.

claim, contending that her requested accommodations are unreasonable as a matter of law.  The Court agrees.

"The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so."[43]  "If [the employee] can't perform the essential functions of his job absent assigning those duties to someone else, (e.g., having someone else perform his job) then [the employee] cannot be reasonably accommodated as a matter of law."[44]

The undisputed evidence shows that Claiborne's essential job function of monitoring students required her to travel up and down the stairs escorting students to various locations, stand for periods of time in the hallway and the cafeteria, and to move around her classrooms and the cafeteria.[45]  To satisfy Claiborne's accommodation requests, RSD would have had to relieve her of essential job functions and assign her job functions to someone else.  As previously discussed, an employer, such as RSD, is not required under the ADA to make such changes for a disabled employee.[46]  In an attempt to survive summary judgment, Claiborne sets forth purely speculative arguments about

---

[43] *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999).

[44] *Miller v. Metrocare Services*, 2015 WL 477233, *15 (N.D. Tex. Feb. 5, 2015)(quoting *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998)).

[45] Claiborne did not contest the following proposed statements of undisputed facts submitted by RSD: (1) that one of Claiborne's essential job functions was monitoring students; (2) "[m]onitoring the students required walking up and down the stairs, escorting students to and from the restroom and cafeteria, walking around the classrooms to ensure students were doing their work and bus duty;" and (3) "[b]us duty entailed going up and down the stairs, waiting for the busses to arrive with students and standing in the halls between classes to monitor students."  Rec. Doc. 14-2 compared with Rec. Doc. 20-1.  *See also*, *supra* note 40.

[46] It is not clear to the Court whether Claiborne is arguing that Principal Coates failed to accommodate her by not permitting Claiborne's former colleague, Roger Cooper, to "switch assignments" with her so she could monitor fewer students.  To the extent Claiborne is making such an argument, the Court notes that the request was made by Cooper, not Claiborne.  Secondly, under the ADA, the RSD had no obligation to make such an "accommodation" as it would have relieved Claiborne of the essential functions of her job and imposed those functions on another employee.

the ways in which the RSD could have accommodated her, such as providing her with a wheelchair or relocating her classes to the first floor.  Such speculation and unsubstantiated assertions are insufficient to defeat RSD's summary judgment motion. The Court further finds that Claiborne has failed to offer any evidence showing that such "accommodations" would have enabled her to perform the essential functions of her job. Accordingly, Claiborne's failure to accommodate claim shall be dismissed.

### C. Termination Claims

Claiborne asserts three claims arising out of her termination from the RSD. Claiborne claims that the RSD terminated her because of her disability in violation of the ADA and the LEDL.[47]  Claiborne further asserts that the RSD terminated her in retaliation for requesting an accommodation in violation of the ADA and for filing a worker's compensation claim in violation of La. R.S. 23:1361(B).  Each claim shall be addressed in turn.

#### 1.  Discriminatory Termination

Under the ADA, a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[48]  "When a plaintiff can offer only circumstantial evidence to prove a violation of the ADA, this court applies the *McDonnell Douglas* burden-shifting framework."[49]  Under the *McDonnell Douglas* framework, the

---

[47] Claims brought under the LEDL are analyzed using the same framework as ADA claims. See *supra* note 39.
[48] 42 U.S.C. § 12112(a).
[49] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)(quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009)).

plaintiff must first establish a *prima facie* case of discrimination.[50]  If the plaintiff meets its burden, then the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action."[51]  If the employer satisfies its burden, the burden shifts back to the plaintiff to show that the employer's articulated reason is pretextual.[52]

As recently observed by the district court for the Northern District of Texas[53] the Fifth Circuit has acknowledged that some discrepancy exists within its own jurisprudence regarding the elements necessary to establish a *prima facie* case of disability discrimination:

> There is "a discrepancy in the Fifth Circuit's cases evaluating the requisite nexus between an employee's disability and her termination."  In *LHC Group*, the Fifth Circuit held that, "[t]o establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."  *But see, e.g.*, *McCollum v. Puckett Mach. Co.*, ____ F.App'x ____, No. 15-60166, 2015 WL 5817650, at *3 (5th Cir. Oct. 6, 2015)(per curium)(holding that a plaintiff must show: "(1) He is disabled, (2) he is qualified for his job, (3) he was subject to an adverse employment action on account of his disability and (4) he was replaced by or treated less favorably than non-disabled employees."[54]

Even assuming that Claiborne could establish a *prima facie* case of discriminatory termination under the ADA, RSD has articulated a legitimate non-discriminatory reason for her termination and Claiborne has failed to identify a genuine issue of material fact that the proffered reason is pretextual.

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Brewer v. Lavoi Corp.*, 2016 WL 769977 (N.D.Tex. Jan. 22, 2016)(Findings, Conclusions, and Recommendations of the United States Magistrate Judge)(*Brewer v. Lavoi Corp.*, 2016 WL 759570 (N.D.Tex. Feb. 26, 2016)(Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge).

[54] *Id.* at *7.

32214                                    10

RSD has offered evidence showing that Claiborne, along with all other regular paraprofessionals employed at Prescott, were terminated as part of a reduction in force (RIF) due to "rapidly plummeting enrollment"[55] and a "tight operating budget."[56] The Deputy Chief of Staff for the RSD, Laura Hawkins, was involved in the RIF that affected Prescott and Claiborne; however, she had no involvement in Claiborne's request for accommodation.[57] Hawkins stated that "[w]hen making a RIF decision, we consider the basics—what funds we have, the amount of student enrollment and the budget."[58] She further explained that they "first try to keep all the teachers because they are essential to the school staying open; next, if there is sufficient funding, … we try to keep special education paraprofessionals because they work with students who have an individualized education plan (IEP)."[59] Then, the RSD tries to keep school counselors, social workers, and mental professionals. According to Hawkins, "the regular professionals, like Ms. Claiborne's position, are the positions that can be cut at any time because the positions are not necessary or essential. The school can operate without regular paraprofessionals."[60] She attested to the fact that all of the regular paraprofessional positions, including the one held by Claiborne, were included in the RIF at Prescott Middle.[61] In contrast, the evidence shows that special education paraprofessionals were

---

[55] Rec. Doc. 14-5, p. 2. Rec. Doc. 14-6, p. 2 (*Affidavit* of Brandy Whitfield, former Human Resource Generalist for RSD). Prescott only remained open for one more school year, 2013-2014, before being closed permanently. Rec. Doc. 14-9, p. 2 (*Affidavit* of Lakeisha Robichaux, former Executive Director of the RSD).
[56] Rec. Doc. 14-5, p.2. (Hawkins attested that "[i]n 2013, it was a very tight budget [for the RSD] and all the schools were going to have to operate at a bare bones level. Cuts were made district-wide as enrollment decreased.").
[57] Rec. Doc. 14-5, p.1.
[58] Rec. Doc. 14-5, p. 1.
[59] Rec. Doc. 14-5, p. 1.
[60] Rec. Doc. 14-5, p. 2.
[61] Rec. Doc. 14-5, p.2.

not laid off because of IDEA specifications and Prescott's receipt of special education funding from the federal government.[62]   One of those specifications required "that a special education paraprofessional had to be placed with a specific child based on their needs."[63]

In an attempt to show that RSD's legitimate reason for termination is merely pretextual, Claiborne first argues that she was not a "regular paraprofessional" but a "special education paraprofessional" and, therefore, never should have been terminated. She relies upon *Affidavit* attestations of her former colleague, Roger Cooper, and Prescott's former Operation's Manager/Office Manager, Tamatha Brown, to buttress her position.[64]   However, neither of their declarations include any factual support for the Court to determine they had any personal knowledge about Claiborne's job title or duties.   In the absence of personal knowledge the attestations are incompetent summary judgment evidence and, therefore, will not be considered by the Court.[65]

When the Court turns its attention to admissible evidence in the record, it is very clear that Claiborne was, in fact, a regular paraprofessional.   For instance, Claiborne's Employee Notification Form identifies her as holding the position of "paraprofessional" whose separation from employment was due to a "Reduction in Force."[66]   During her

---

[62] Rec. Doc. 14-6, p. 2; Rec. Doc. 14-9, p. 2.

[63] Rec. Doc. 14-9, p. 2.

[64] Rec. Doc. 20-5; Rec. Doc. 20-6.

[65] Rule 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). *Gahagan v. United States Citizenship and Immigration Services*, 2015 WL 7777982, *2 (E.D.La. Dec. 2, 2015)("While a declaration need not specifically state that it is based on personal knowledge, it must include enough factual support for a court to determine that its averments were based upon the personal knowledge of the declarant.   When considering a motion for summary judgment, a court disregards any portion of a declaration that fails to comply with Rule 56(c)(4)."(quotations and internal citations omitted)).

[66] Rec. Doc. 23-2.

deposition testimony, Claiborne similarly testified that her last position at Prescott was that of a "para-professional."[67]  Principal Coates further testified that Claiborne was one of only two paraprofessional/interventionists at the school.[68]   Prescott's former school Secretary also attested to the fact that Claiborne was a "Paraprofessional."[69]

Additionally, both Coates and Claiborne described her duties as those of a regular paraprofessional.  Her duties included working with, monitoring, and teaching groups of students in a classroom setting.[70]  It is undisputed that Claiborne taught 10 to 15 students in her English intervention class and approximately 30 students in her Building Leaders class.[71]  The evidence shows that Claiborne's job duties and responsibilities differed from those of special education paraprofessionals who were assigned to one specific child based upon his/her individualized education plans (IEPs).[72]   Accordingly, the Court finds that Claiborne has failed to create a genuine dispute of material fact regarding her job position at Prescott.

Claiborne further argues that the lack of knowledge of any planned layoff at Prescott by the school's Principal, Operations Manager/Office Manager, and Secretary, defeats the legitimacy of the RIF as a "planned endeavor."[73]   The Court finds otherwise.

Initially, the Court notes that the *Affidavit* of Prescott's former Operations Manager/Office Manager is completely devoid of any discussion about the school's budgetary concerns and the RIF and, therefore, lends nothing to Claiborne's argument.[74]

---

[67] Rec. Doc. 14-4, p. 3.
[68] Rec. Doc. 20-3, p. 12.
[69] Rec. Doc. 20-7.
[70] Rec. Doc. 14-4, pp. 6-10; Rec. Doc. 20-3, p. 20.
[71] Rec. Doc. 20-3, p.20 and p. 23.
[72] Rec. Doc. 14-5, p. 1.
[73] Rec. Doc. 20, p. 9.
[74] Rec. Doc. 20-6.

32214                                                    13

As for the lack of knowledge of layoffs at Prescott by Principal Coates and the school's Secretary, it is undisputed that they were not involved in the RIF decision-making process.[75]   The uncontroverted evidence shows that the RIF decision-making process occurred at the district level and affected all ten RSD schools.[76]   RSD Deputy Chief of Staff Hawkins attested to the fact that she participated in the RIF process and determined which positions to cut from the budget at Prescott.   In making this decision, Hawkins further stated that she knew nothing about Claiborne being on worker's compensation or her request for accommodations and that her decision was driven purely by Prescott's declining enrollment and budgetary concerns.[77]   This is corroborated by the former HR Director for the RSD in Baton Rouge, Lakeisha Robichaux ("Robichaux"), who claimed that the only information she submitted to "the persons making the decisions about the positions to be eliminated in the RIF" were the numbers of staff members, along with their titles, and students enrolled at Prescott.[78]   According to Robichaux, whether an employee had made a request for an accommodation was not a consideration in making RIF decisions.[79]

The Court finds that Claiborne has failed to offer any evidence showing that the reason and method for applying the RIF were pretextual.   Rather, the undisputed

---

[75] It appears that Claiborne may be attempting to rely upon Principal Coates' alleged statement to her sister and former school Secretary, Brenda Claiborne, whereby he told her to "call Vera and tell her if she did not report to work immediately to assist" with the LEAP exam "she would be fired" as a means of defeating the legitimate, non-discriminatory reason offered by the RSD.   (Rec. Doc. 20-7, p. 2).   Without deciding the admissibility of this statement, the Court finds such an argument lacks merit as it is undisputed that Coates had no direct or indirect involvement in the RIF decision-making process.   Coates specifically testified that he lacked any knowledge about whether there was a layoff at Prescott.   Rec. Doc. 20-3, p. 23.   He further testified that he did not know when Claiborne left her job as a "paraprofessional interventionist."   Rec. Doc. 20-3, p. 20.
[76] Rec. Doc. 20-2, p. 25.
[77] Rec. Doc. 14-5.
[78] Rec. Doc. 14-9.
[79] Rec. Doc. 14-9.   Robichaux further stated that "Ms. Claiborne had made no request for an accommodation so [she] certainly did not consider that either."

32214                                    14

evidence clearly demonstrates that the RIF, which resulted in Claiborne's lay off, was made for purely objective reasons--specifically the school's declining enrollment and the tight operating budget.  Accordingly, Claiborne's claim that she was terminated because of her disability shall be dismissed.

2.  <u>Retaliatory Discharge For Requesting Accommodation</u>

RSD also seeks summary dismissal of Claiborne's ADA retaliation claim.  In order to establish a *prima facie* case of retaliation under the ADA, Claiborne "must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action."[80]  "'If the employee establishes a *prima facie* case, the burden shift to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.'"[81]  An employee can accomplish this "by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive."[82]  To survive summary judgment, "the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."[83]

Even assuming that Claiborne could make a *prima facie* case of retaliation, the Court finds that her claim must fail for similar reasons as those discussed in regard to her

---

[80] *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)(citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)(Title VII); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)(ADA)).
[81] *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)(internal citation omitted))(emphasis added).
[82] *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ---U.S.---, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)(Title VII); *Seaman*, 179 F.3d at 301 (ADA)).
[83] *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)(internal quotation marks omitted)).

disability termination claim.  In particular, RSD has set forth a legitimate, non-retaliatory reason for Claiborne's discharge—she was terminated as part of a RIF.  The evidence offered by RSD demonstrates that the selection of employees who were terminated was made at the district level and based on purely objective criteria.

On this claim, Claiborne makes two arguments to show that the decision was purely pre-textual.  As for her first argument, Claiborne once again argues that lack of knowledge of the RIF by Principal Coates, Prescott's Operations /Office Manager, and Prescott's Secretary demonstrates pretext.  For the same reasons set forth above, the Court finds that such lack of knowledge does not create a genuine dispute of material fact as to the legitimacy of the RIF.[84]

Claiborne's second argument of pretext turns on a statement she claims Brandy Whitfield made to her.  Whitfield worked as a HR Generalist for the RSD in Baton Rouge from August 2012 until September 2014.[85]  Claiborne testified that, during a June 2013 telephone call, Whitfield "said that [Claiborne] was at risk and that's why [she] was fired."[86]  Admittedly, this is the only evidence offered by Claiborne to show that she was terminated for requesting an accommodation.[87]

"Workplace remarks may constitute direct evidence of discrimination if they are 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment

---

[84] See, *supra* section C.1.
[85] Rec. Doc. 14-6, p.1.
[86] Rec. Doc. 14-4, p. 19.
[87] Rec. Doc. 14-4, pp. 18-19.

decision at issue."[88]  However, "[i]f the comments fail to meet these criteria, e.g., if they are vague and remote in time, or the speaker has no authority or influence over the employment decisions, they are merely 'stray remarks.'"[89]  Where stray remarks are the only evidence of pretext, they are not probative of retaliation.[90]

Applying the foregoing test to Whitfield's alleged comment—that Claiborne was "at risk"—the Court finds that her statement does not constitute direct evidence of discrimination.  The Court agrees with RSD's contention that this remark bears no relation to Claiborne's disability or disabled persons in general.  It is also undisputed that Whitfield had no involvement in the RIF at Prescott which led to Claiborne's termination.[91]  Although Whitfield worked with Prescott, the RIF decision was made at the human resource department at the district level.[92]  Even assuming that Whitfield had made such a remark, Claiborne has failed to adduce evidence that would enable a reasonable trier of fact to find that Whitfield had any "leverage, or exerted influence" over RSD Deputy Chief Hawkins' decision to terminate Claiborne.[93]  Considering Whitfield's sole remark is Claiborne's only evidence of pretext, it is not probative of retaliation.  Accordingly, the Court finds that Claiborne has failed to create a genuine dispute of material fact that RSD's legitimate non-discriminatory reason for terminating Claiborne was pre-textual or that her request for an accommodation was the "but for" cause for her termination.

---

[88] *Williamson v. American Nat. Ins. Co.*, 695 F.Supp.2d 431, 446 (S.D.Tex. 2010)(quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996); *Patel v. Midland Memorial Hosp. & Medical Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002)(quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222-23 (5th Cir. 2001))).

[89] *Id.* (citing *Krystek v. Univ. of Southern Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)).

[90] *Id.* (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003)).

[91] Rec. Doc. 20-2, p. 25.

[92] Rec. Doc. 14-5; Rec. Doc. 14-9; Rec. Doc. 20-2, p. 25.

[93] *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007)(quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)).

Therefore, Claiborne's claim of retaliation for requesting an accommodation shall be dismissed.

3.  Retaliatory Discharge in Violation of La. R.S. § 23:1361(B)

RSD seeks dismissal of Claiborne's claim that she was terminated for filing a worker's compensation claim in violation of Louisiana law.  RSD offers the 2013 RIF as the legitimate, non-discriminatory reason for Claiborne's termination.   Claiborne disagrees contending that as a "Special Paraprofessional" she should not have been included in the RIF, and the timing of her lay off in relation to filing her worker's compensation claim should defeat RSD's motion.

La. R.S. 23:1361(B) provides that "[n]o person shall discharge an employee from employment because of said employee having asserted a claim for [workers' compensation] benefits."  "In advancing a claim for retaliatory discharge under the Worker's Compensation Statute, the employee bears the burden of proving by a preponderance of the evidence that she was terminated for asserting a workers' compensation claim."[94]   She may satisfy her burden by "either by presenting direct evidence that the assertion of a workers' compensation claim was the reason for the discharge or by presenting circumstantial evidence sufficient to establish more probably than not that the reason for the discharge was the assertion of the workers' compensation claim."[95]   If the employer provides "an alternative nondiscriminatory reason for the discharge, and presents sufficient evidence to prove more probably than not that the real reason for the employee's discharge was something other than the assertion of the

---

[94] *Chenevert v. Christus Continuing Care*, 2015 WL 6438675, *7 (W.D.La. Oct. 21, 2015)(citing *Lewis v. Willamette Indus., Inc.*, 537 So.2d 780 (La.App.2d Cir. 1989)).

[95] *Hansford v. St. Francis Medical Center, Inc.*, 43,984 (La.App. 2 Cir. 1/14/09), 999 So.2d 1238, 1241-42 (citing *Chivleatto v. Sportsman's Cove, Inc.*, 05-136 (La.App. 5 Cir. 6/28/05), 907 So.2d 815).

workers' compensation claim, the plaintiff is precluded from recovery."[96]  However, if the "court finds that it is more probable than not that the employer's nondiscriminatory explanation for the discharge is just a guise for retaliatory discharge, the employee is entitled to recovery."[97]  An employee may not carry her burden of proof by relying on the "[t]iming of dismissal alone."[98]

It is undisputed that Claiborne submitted a worker's compensation claim for medical expenses and for salary while she was employed by RSD.[99]  However, RSD has submitted evidence showing that it had a legitimate, non-discriminatory reason for terminating Claiborne—the 2013 RIF.  RSD's evidence demonstrates that only objective factors were considered in making its decision to lay off Claiborne—declining student enrollment at Prescott and budgetary issues.[100]  Hawkins attested to the fact that she knew nothing about Claiborne being on worker's compensation when she made her RIF decisions.[101]  Robichaux also stated that only objective criteria—student enrollment and staff numbers, along with job titles—were submitted to the RIF decision-makers and that "[w]hether someone is on worker's compensation … is not a consideration when deciding positions that could be eliminated in a RIF."[102]

The Court finds no merit in Claiborne's attempt to manufacture a genuine issue of material fact as to her official job title at Prescott.  As previously discussed herein, the evidence clearly demonstrates that Claiborne was a paraprofessional and, therefore,

---

[96] *Id.* at 1242 (citing *Chivleatto*).
[97] *Id.*
[98] *Id.* (citing *King v. Career Training Specialists, Inc.*, 35,050 (La.App. 2d Cir. 9/26/01), 795 So.2d 1223).
[99] Rec. Doc. 14-4, pp. 23-24; Rec. Doc. 14-7.
[100] Rec. Doc. 14-5; Rec. Doc. 14-9.
[101] Rec. Doc. 14-5, p. 2.  Hawkins further attested that whether an employee was on worker's compensation was not a consideration in making her RIF decisions.
[102] Rec. Doc. 14-9, p.2.

rightly included in the RIF at Prescott.  As a matter of law, Claiborne's temporal argument must also fail.  Although approximately three months lapsed between the time Claiborne filed her workers' compensation claim for salary benefits and her lay off from Prescott, timing of dismissal alone cannot carry the burden at the end of the day.

Accordingly, Claiborne's retaliatory discharge claim for filing a workers' compensation claim shall be dismissed.

## III.    CONCLUSION

Accordingly, the *Motion for Summary Judgment*[103] filed by Defendant, the Recovery School District, is hereby GRANTED.  Vera Claiborne's claims are hereby dismissed with prejudice in favor of the Recovery School District.

*Judgment* shall be entered accordingly.

 **IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 1, 2016.

_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[103] Rec. Doc. 14.